**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **JACOBS TECHNOLOGY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 07-674C** |
| **v.** | ) | **(Judge Baskir)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO JOINT MOTION TO DISMISS**

Defendant, the United States, respectfully replies to plaintiff Jacobs Technology Corp. (Jacobs)'s December 14, 2007 opposition to the joint motion to dismiss (Pl. Opp.). Jacobs is the Air Force's ETASS contract awardee. Pl. Opp. at 1. Following the GAO recommendation for corrective action, the agency decided, once again, that Jacobs is the Air Force's contract awardee. Id. Jacobs's complaint is moot and should be dismissed.

**1. Jacobs's Opposition Is Based Upon Inapposite Cases Involving Protests Of Contract Awards Terminated Or Subjected To New Changed Competition**

Jacobs's opposition relies upon inapposite cases in which the protest concerned contract awards terminated or subjected to new and changed competition. Jacobs misplaces its reliance upon what appears to be one

sentence of dictum that "[t]here may be circumstances where a *successful* bidder would have a direct economic interest that is affected by the award of the contract," Pl. Opp. at 5-6, quoting Griffy's Landscape Maintenance LLC v. United States, 51 Fed. Cl. 667, 672 (2001). Griffy's is inapposite, as is revealed in the very next sentence following the one quoted by Jacobs: "[h]owever, at least with regard to the initial contract's termination we agree - plaintiff is not challenging the award, but the termination." Id. at 672. Thus -- in contradistinction with Jacobs -- the Griffy's plaintiff suffered the actual termination of its contract (for which it sought lost profits, which the Court held to be a Contract Disputes Act claim, not a bid protest, id., at 673).

Further, the plaintiff-bidder in Griffy's protested a re-solicitation on changed terms that allegedly would effect an improper "auction." Id. at 674. Likewise, the plaintiff in Delaney Constr. Corp. v. United States, 56 Fed. Cl. 470 (Fed. Cl. 2003) protested a "proposed corrective action" that involved "rescinding or terminating the contract award . . . adding the omitted FAR . . clause to the RFP, [and] soliciting new price proposals." Id. at 474 (emphasis added). Similarly, the contract awardee in The Centech Group v. United States, 78 Fed. Cl 497 (Fed. Cl. 2007), was held

to have been "stripped of its status as the successful awardee *de facto* and relegated to competing anew . . . under Amendment 3 and the revised criteria." Id. at 504. Under Amendment 3, "offerors were permitted to revise both the technical and cost terms of their proposals." Id.

In contrast with all of the cases cited by Jacobs in support of its opposition, the facts in this case are entirely different:

> The Air Force did not reopen discussions. No new proposal information was provided by offerors. The Air Force re-evaluated proposals without further discussions and, again, determined the awardee to be Jacobs.

Pl. Opp. 1. Thus, Jacobs was not "relegated to competing anew." Moreover, Jacobs cannot maintain credibly that it has even a possibility of being prejudiced by the corrective action -- because it has been completed without changing the Air Force's decision to award to Jacobs.

### 2. Jacobs Lacks Standing And Having Received The Contract Award Has No Justiciable Bid Protest Claim

#### a. Standing Is A Threshold Jurisdictional Issue

"Like mootness, standing is a threshold jurisdictional issue." Myers Investigative and Sec. Serv., Inc. v. United States, 275 F.3d 1366, 1369 (2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)). "The party invoking federal jurisdiction bears the burden of establishing

[the] elements [of standing].” Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)) (brackets in original). “[P]rejudice (or injury) is a necessary element of standing.” Id. Thus, Jacobs must have suffered an “‘injury in fact’ – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) ‘actual or imminent, not ‘conjectural’ or ‘hypothetical.’’” Lujan, 504 U.S. at 561 (citations omitted).

**b. Jacobs Was Awarded The Unchanged Contract And Has No Standing**

Jacobs argues that it “will have no remedy to challenge the Air Force’s corrective action decision if this action is dismissed,” Pl. Opp. at 1, and that it “must maintain this action or else it waives its right to challenge the corrective action taken by the Air Force.” Pl. Opp. at 6. But Jacobs has nothing to challenge about the Air Force’s corrective action decision in light of the facts that: (a) the Air Force did not relegate Jacobs to competing anew with changed proposals, see Pl. Opp. 1, and (b) the result of the corrective action decision left undisturbed the Air Force’s selection of Jacobs as the contract awardee. Id.

Because Jacobs was awarded the ETASS contract following the reevaluation, Jacobs is not an interested party under 28 U.S.C. §

1491(b)(1) and (b)(2). See ABF Freight Sys. Inc. v. United States, 55 Fed. Cl. 392, 397 (2003) (dismissing claims of contract awardees *sua sponte* "because plaintiffs . . . received contract awards . . . they are not disappointed bidders and do not have standing to assert this protest.").

The Court in Centech, after observing that the issuance of a resolicitation as corrective action "may have mooted the GAO protest" but not the protest before the Court, went on to note that:

> the corrective action which would render *this* protest moot would be the Air Force's . . . reinstatement of [the original awardee]'s award.

Id., 78 Fed. Cl. at 504, n. 14. Applying the Court's reasoning to Jacobs's protest, the corrective action that has rendered this protest moot is the Air Force's reaffirming its selection of Jacobs as the contract awardee without soliciting new proposals.

Jacobs argues that the Court's observation in Centech that an award issued on the same solicitation would moot the protest "necessarily assumes that there would be no further protests challenging the award." Pl. Opp. at 5. There is no basis in fact or logic for Jacobs's argument. The Court discussed and thus plainly was aware of the availability of the GAO as a protest forum and, thus, the possibility of serial protests. E.g.,

78 Fed. Cl. at 504. Jacobs further argues that mootness will not be established until potential protestors "agree" not to bring an action in the future. Id. But whether another party hypothetically may in the future bring another case, cannot change the mootness of Jacobs's claim as against the United States in this protest case. That mootness necessarily results from the Air Force having reaffirmed its decision selecting Jacobs as the contract awardee. The Air Force's decision to reaffirm award to Jacobs based upon unchanged proposals would and did "render *this* protest moot." Id., 78 Fed. Cl. at 504, n. 14.

## CONCLUSION

For these reasons, we respectfully request that the Court grant the joint motion to dismiss Jacobs' claim.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

/s/ Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Room 4044
Washington, D.C. 20530
Tel: (202) 305-3319
Fax: (202) 514-8624

Dated: December 17, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby declare that on this 17th day of December, 2007, a copy of the foregoing "**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO JOINT MOTION TO DISMISS** " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Brian A. Mizoguchi
Brian A. Mizoguchi